IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| CARLTON L. BRYANT, | ) | Civil Action No.: 4:06-01893-JFA-TER |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs | ) | |
| | ) | REPORT AND RECOMMENDATION |
| DAVID CRENSHAW, DIRECTOR | ) | |
| ACDC, ARLETTE JONES, | ) | |
| LIEUTENANT ACDC, NURSE | ) | |
| HAMPTON, ACDC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I. PROCEDURAL BACKGROUND

The plaintiff, Carlton Bryant, filed this action on June 27, 2006, alleging violations of his

constitutional rights.[1]  During the time of the matters alleged in his complaint, plaintiff was housed

at the Anderson County Detention Center (ACDC) as a pretrial detainee since May 12, 2005. On

October 30, 2006, the defendants filed a motion for summary judgment with a memorandum in

support of that motion. Because plaintiff is proceeding pro se, he was advised on or about October

31, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond

to the defendants' motion for summary judgment with additional evidence or counter affidavits could

result in the dismissal of his complaint.  The plaintiff filed a response on November 27, 2006.

(Document #15).

_____

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d),DSC. Because
this is a dispositive motion, the report and recommendation is entered for review by the district
judge.

## II.  DISCUSSION

### A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges indifference to his medical needs. Plaintiff asserts the following, quoted

verbatim:

> I was incarcerated May 12, 2005. Since my incarceration I have had
> constant dental pain. I am indigent at this time and am unable to
> afford to pay for dental care.
>
> I was transported to Piedmont dental in July of 2005 to have a tooth
> extracted. I was told and also the transporting officer was told that I
> needed to be brought back soon for a follow up visit for another
> extraction.
>
> The medical staff allowed me to suffer in severe pain until December
> of 2005, when my jaw swelled up. They took me back to Piedmont
> Dental, they removed my tooth while it was still abcessed[sic]. I have
> had to practically beg for Ibuprofen for pain. The dentist told myself
> and the transporting officer (McColough) that I needed to be returned
> for a follow up visit as soon as possible to check the status of my
> dental needs.
>
> Since December of 2005 until present date I have had to suffer in
> pain, and have been supplied only minor pain relief. The pain
> medication that I do receive which was and is few and far between
> requests is not enough to give me much relief.
>
> I have written numerous grievances that are to many to count, and I
> have also received no response in writing returned to me as instructed
> at the bottom of each grievance.
>
> I was told by Nurse Black that they no longer supply dental care,
> however, Nurse Langston has told me that I was on the list to be
> transported to Piedmont Dental.
>
> David Crenshaw is the acting Director and has told nurses that they
> do not supply dental care anymore. Arlette Jones is over medical and
> is therefore responsible for the medical departments actions. Nurse
> Hampton is the acting head nurse and has shown very little concern
> for my pain.

2

(Complaint).

In the relief portion of his complaint, plaintiff requests the following relief:

    1.    Attention to my dental needs and any other medical need during incarceration at the Anderson County Detention Center.

    2.    Provide medications needed for any medical condition.

    3.    Also help for medical needs to all of those thereafter

(Complaint, p. 5).

Defendants filed a motion for summary judgment arguing plaintiff's claim should be dismissed for the following reasons:

Plaintiff has failed to allege or set forth specific facts sufficient to support any claim which would trigger the protections of the Eighth or Fourteenth Amendments.

Plaintiff has failed to allege or set forth sufficient facts to show any serious or significant physical or mental injury.

Plaintiff's claims against the named individuals are wholly inconsistent with plaintiff's prayer for relief as to Anderson County Detention Center, which is not a party to this action.

Plaintiff has failed to allege or set forth specific facts sufficient to show any genuine issue of material fact for which relief may be granted against any of the named defendants.

Plaintiff has failed to allege or set forth specific facts sufficient to show any genuine issue of material fact for which relief may be granted against Anderson County David Crenshaw-either in his official capacity or in his individual capacity.

Plaintiff has failed to exhaust all available administrative remedies as required by 42 U.S.C. §1997(e).

(Memorandum).

3

## B.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements

4

of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

## C.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment.  Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987).  The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished.  An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual."  Bell v. Wolfish, 441 U.S. 520 (1979).  Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime.  Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials.  If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld.  Bell, 441 U.S. at 538.

Since the plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality.  Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S.

9 (1980) (per curiam). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam). However, plaintiff is cautioned that the court may not rewrite his pleadings; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct defendant's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). Further, while the court should afford a *pro se* litigant every reasonable opportunity to construct and present his side, the court cannot act as counsel for the *pro se* litigant or excuse a failure to comply with the rules of this court.

## D. MEDICAL INDIFFERENCE

As previously stated, plaintiff alleges he was transported to Piedmont Dental in July 2005 to have a tooth extracted. Plaintiff alleges that he was told to "come back soon for a follow up visit for another extraction." (Complaint). However, plaintiff alleges the medical staff at ACDC allowed him to suffer until December 2005 before taking him back to Piedmont Dental where his tooth was extracted. Plaintiff alleges that he had to "practically beg for Ibuprofen for pain." Plaintiff asserts that the dentist said he would need to return for a follow up visit but that as of the date of filing his complaint, he had not been returned. Plaintiff alleges he has been suffering with pain and has only being supplied minor pain relief. Plaintiff asserts that one nurse, Nurse Black, informed him that ACDC was no longer supplying dental care while another nurse, Nurse Langston, informed him that he was on the list to be transported to Piedmont Dental.

Defendants argue plaintiff names three individuals, including Anderson County Sheriff and

6

acting Director of the ACDC and two other employees or officers at the ACDC but does not allege

that any of the defendants were personally responsible for the incidents described in his complaint.

Defendants argue that in the light most favorable to the plaintiff, he alleges he required dental care,

including extraction of two teeth, that he subsequently received the requisite medical attention for

his condition, including two separate visits to the Piedmont Dental Clinic, and received follow-up

pain medication and antibiotics. Further, defendants assert in their memorandum that "Plaintiff has

neither alleged nor demonstrated that Defendants, or any of them, knew of any specific risk to

plaintiff. In fact, even prior to his deposition testimony, Plaintiff acknowledged in his complaint that

he received at least some pain medication. (Plaintiff's compliant, .4). Accordingly, because the facts

alleged by Plaintiff are plainly insufficient to state a constitutional claim, Defendants are entitled to

summary judgment." (Memorandum p. 7). Defendants further argue that plaintiff has failed to

demonstrate that his alleged medical need for additional dental treatment, beyond what he admits

he received, was ever diagnosed by a physician as requiring additional treatment, that the necessity

for a physician's attention was obvious to a lay person, or that the lack of additional treatment has

caused him to suffer any handicap or permanent loss. Defendants argue that Sheriff Crenshaw is

entitled to Eleventh Amendment immunity in his official capacity and qualified immunity in his

individual capacity.  Further, defendants assert that supervisory liability for constitutional injuries

is not imposed on a respondeat superior basis.

　　　　Defendants submitted a copy of plaintiff's deposition taken September 8, 2006, in which

plaintiff admitted that the ACDC transported him to the Piedmont Dental Clinic in Anderson to have

a tooth pulled in July of 2005, and December of 2005. (Plaintiff's deposition p. 19-20). Defendants

point out that plaintiff admitted that the treatment he received in December of 2005 included

approximately two weeks of follow-up prescription pain medication. (Id. P. 21-22, 29). Further, plaintiff stated at his deposition that at least since July 2006, the ACDC has provided Ibuprofen for plaintiff as often as three times per day. (Id. 25-26). Further, defendants assert that "plaintiff has testified that he is currently talking antibiotics prescribed by the physician at the ACDC for his gums, that he has not been required to pay for any treatment to date and that he understands that he is on a list to be transported back to Piedmont Dental Clinic. (Id. at p. 26-29).

A review of the deposition reveals that plaintiff stated that he did not receive any antibiotics after his tooth was pulled in December 2005, but received prescription pain medication. Plaintiff asserts in his deposition that he has been receiving Ibuprofen about three times a day and has been told he is on a list to return to Piedmont Dental but that he went for a period of time without any pain medication for his gums. Plaintiff stated in his deposition that he could not say that any of the defendants were doing anything to him on purpose because he has been receiving help from Ms. Jones. (Deposition p. 42).

As set out above, plaintiff alleges that "David Crenshaw is the acting director and has told nurses that they do not supply dental care anymore." Plaintiff alleges defendant "Arlette Jones is over medical and is therefore, responsible for the medical departments' actions." Plaintiff contends that "Nurse Hampton is the acting head nurse and has shown very little concern for my pain." (Complaint)

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).  The Court stated:

An inmate must rely on prison authorities to treat his medical

8

> needs; if the authorities fail to do so, those needs will not be met. . . .  We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," <u>Gregg v. Georgia</u>, supra, at 173, (joint opinion), proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

<u>Estelle</u>, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

<u>Estelle</u>, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of <u>Miltier v. Beorn</u>, 896 F.2d 848 (4th Cir. 1990).  In that case, the Court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." <u>Id.</u> at 851.  Unless medical needs were serious or life threatening,

and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail.  Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

In order to establish a prima facie case under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment.  Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases).  "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra.  Negligence, in general, is not actionable under 42 U.S.C. § 1983.  See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94  (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying  Daniels vs. Williams  and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law.  DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989).  Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the

10

victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal). Thus, even if the plaintiff were able to show that defendants' actions somehow constituted medical negligence or medical malpractice, these are not actionable under 42 U.S.C. § 1983.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

In the present case, the plaintiff's allegations are brought against defendants for not timely responding to his request for medical attention due to a toothache or not following up with treatment appropriately. Although plaintiff did not agree with the type of treatment he received, the fact is plaintiff was provided treatment and medication was prescribed for the pain. As previously stated,

11

a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. Negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983. Negligence, in general, is not actionable under 42 U.S.C. § 1983. If this claim could be construed as asserting medical malpractice, it must also fail. Medical malpractice is not actionable under 42 U.S.C. § 1983.  *See* Estelle v. Gamble, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). In addition, plaintiff has failed to identify any medical expert or provide expert testimony regarding the standard of care, defendants' failure to conform to the standard, or the issue of proximate cause.

Based on the evidence, there has been no deliberate indifference shown to the overall medical needs of the plaintiff.  He received examinations and extractions from outside dental care and medical treatment for his complaints.  The plaintiff has not provided any medical evidence or filed any affidavits that indicate any lack of treatment caused him to suffer any life threatening medical problems. Hence, the plaintiff has failed to state any specifics concerning this allegation. Based on the above, plaintiff's claims of medical indifference, if any, must fail as a matter of law. Thus, the undersigned recommends that defendants' motion for summary judgment be granted as it relates to the plaintiff's claims of medical indifference.[2]

Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the

---

[2] It would have been helpful if defendants had submitted any relevant medical records. Nonetheless, plaintiff was provided treatment and has failed to show medical indifference on the part of these defendants. Plaintiff simply claims he did not get the treatment and frequency of treatment of his choice.

particular institution or prison system. <u>Block v. Rutherford</u>, <u>supra</u>; <u>Rhodes v. Chapman</u>, <u>supra</u>. Plaintiff, like any prisoner, cannot expect the amenities, conveniences, and services of a good hotel. <u>Harris v. Fleming</u>, <u>supra</u>. As previously discussed, the Supreme Court noted that the administration of state prisons is a complex task, with numerous administrative goals, including, among other things, the maintenance of order and discipline within the prison and the prevention of escapes. These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some prison practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials.

## E. RESPONDEAT SUPERIOR

The defendants assert that defendants Crenshaw and Jones cannot be held liable as a supervisory official in that plaintiff has failed to set forth specific facts that are sufficient to constitute a cause of action against any of the named defendants or to provide any factual or evidentiary basis to attribute plaintiff's claims to any of the named defendants.

Under the doctrine of <u>respondeat superior</u>, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action. See <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978) and <u>Fisher v. Washington Metro Area Transit Authority</u>, 690 F. 2d 1133, 1142-43 (4th Cir. 1982). The employer or supervisor may only be held liable if the plaintiff can show that they had actual knowledge of the specific danger, but were deliberately indifferent to the plaintiff's needs despite their knowledge of this danger, <u>Slakan</u>

13

v. Porter, 737 F. 2d 368 (4th Cir. 1984). Plaintiff has failed to meet this burden in that he has failed to show that defendants were responsible for a policy or custom that resulted in illegal action or that he has been deliberately indifferent to the needs of plaintiff.

## F.  QUALIFIED IMMUNITY

Defendants also contend that to the extent plaintiff seeks to proceed against the defendants in their individual capacities, the defendants are entitled to qualified immunity pursuant to Harlow v. Fitzgerald, 457 U.S. 800 (1982). Defendants argue that the acts complained of by plaintiff are discretionary acts which are protected by the doctrine of qualified immunity as each defendant was acting in his/her capacity as an official of the State of South Carolina at all times relevant to this suit.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit.  Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it.  Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity.  Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment.  For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

14

The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

<u>Harlow</u>, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

<u>Wiley v. Doory</u>, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), <u>cert. denied</u>, 516 U.S. 824 (1995). As discussed above, the plaintiff fails to show that the defendants violated any of his clearly established constitutional or statutory rights. Therefore, defendants are entitled to qualified immunity in their individual capacity. Thus, the undersigned recommends that the defendants' motion for summary judgment be granted on this issue.


## G. GRIEVANCE PROCEDURE

As to any claim concerning the inmate grievance procedure at the ACDC, the complaint in this case fails to state a cause of action under 42 U.S.C. § 1983. It is well settled that prison inmates,

15

including pre-trial detainees, do not have a federal constitutional right to have *any* inmate grievance system at the place where they are incarcerated. See, Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994); furthermore, simply because a state or local authority chooses to establish an inmate grievance system, that choice does not confer any substantive constitutional right on the prison inmates or pre-trial detainees covered by that system. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). As a result, even if corrections officials fail to properly apply an inmate grievance procedure, such failure is not actionable under section 1983. See Spencer v. Moore, 638 F.Supp. 315, 316 (E.D.Mo.1986); Azeez v. DeRobertis, 568 F.Supp. 8, 9-11 (N.D.Ill.1982).

## III. CONCLUSION

The plaintiff has failed to show that the defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by defendants (document #12) for summary judgment be GRANTED IN ITS ENTIRETY.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

June 1, 2007
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

16